**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KAREN MAYER, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| DIGIMARC CORPORATION, RILEY MCCORMACK, and CHARLES BECK, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff Karen Mayer ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, her counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Digimarc Corporation ("Digimarc" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Digimarc; and (c) review of other publicly available information concerning Digimarc.

## **NATURE OF THE ACTION AND OVERVIEW**

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Digimarc securities between May 2, 2024 and February 26, 2025, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Digimarc is a digital watermarking technology company. Digimarc's digital watermarking technology is deployed in the identification and the authentication of physical and digital items, often at large scale. For example, in 2019 Digimarc introduced a line of invisible barcodes, in partnership with Walmart, to be used during the self-checkout process.

3.      On February 26, 2025, after the market closed, Digimarc released its fourth quarter and full year 2024 financial results, revealing the Company's quarterly subscription revenue decreased 10% to $5.0 million (compared to $5.6 million in the previous year) and annual recurring revenue had decreased to $20.0 million (compared to $22.23 million in the previous year). These declines "primarily reflect[ed] a $5.8 million decrease in ARR due to the expiration of a commercial contract in June 2024."

4.      On this news, Digimarc's stock price fell $11.65, or 43.1%, to close at $15.39 per share on February 27, 2025, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that a large commercial partner would not renew a large contract on the same terms; (2) that, as a result, Digimarc would renegotiate the large commercial contract; (3) that, as a result of the foregoing, the Company's subscription revenue and annual recurring revenue would be adversely affected; (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Karen Mayer, as set forth in the accompanying certification, incorporated by reference herein, purchased Digimarc securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Digimarc is incorporated under the laws of Oregon with its principal executive offices located in  Beaverton, Oregon. Digimarc's common stock trades on the NASDAQ exchange under the symbol "DMRC."

13.     Defendant Riley McCormack ("McCormack") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Charles Beck ("Beck") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants McCormack and Beck (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts

specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.    Digimarc is a digital watermarking technology company. Digimarc's digital watermarking technology is deployed in the identification and the authentication of physical and digital items, often at large scale. For example, in 2019 Digimarc introduced a line of invisible barcodes, in partnership with Walmart, to be used during the self-checkout process.

### Materially False and Misleading

### Statements Issued During the Class Period

17.    The Class Period begins on May 2, 2024. On that day, the Company reported its first quarter 2024 financial results in a press release that stated, in relevant part:[1]

> "Q1 was another strong quarter for Digimarc. ***Compared to the first quarter of 2023, we grew quarter-ending Annual Recurring Revenue (ARR) 85%, grew commercial subscription revenue 52%, and expanded subscription gross profit margin 7.5 percentage points to 87.0%,***" said Digimarc CEO Riley McCormack. "We are focused on positioning ourselves to convert our large Total Addressable Market (TAM) into substantial free cash flow by delivering high and long-lasting growth at world class operating margins. Q1 provided multiple tangible examples of our progress against this focus."
>
> **First Quarter Financial Results**
>
> **Subscription revenue for the first quarter of 2024 increased to $5.8 million compared to $3.9 million for the first quarter of 2023, primarily reflecting higher subscription revenue from new and existing commercial contracts.**

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

Service revenue for the first quarter of 2024 increased to $4.2 million compared to $4.0 million for the first quarter of 2023, primarily reflecting the timing of government program work.

Total revenue for the first quarter of 2024 increased to $9.9 million compared to $7.8 million for the first quarter of 2023.

18.     On May 3, 2024, Digimarc submitted its quarterly report for the period ended March 31, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. It also stated that "ARR increased $10.9 million, or 85% from March 31, 2023 to March 31, 2024, primarily driven by the entry into new commercial subscription contracts and increased subscription fees on existing commercial contracts."

19.     On August 13, 2024, Digimarc issued a press release announcing its financial results for the quarter ended June 30, 2024. Specifically, the press release stated, in relevant part:

> "Digimarc made significant progress on multiple fronts in Q2, highlighted by three exciting developments likely to have a profound impact on the second half of this year and beyond," said Digimarc CEO Riley McCormack. "This progress provides further evidence that we believe Digimarc will not only unlock the massive total addressable markets ("TAMs") on which we are focused today, but also that new TAMs can develop incredibly rapidly based on our ability to identify and authenticate physical and digital assets where other means of identification and authentication don't work well, or don't work at all."

> **Second Quarter Financial Results**

> ***Annual recurring revenue as of June 30, 2024 increased to $23.9 million compared to $16.7 million as of June 30, 2023.***

> ***Subscription revenue for the second quarter of 2024 increased to $6.4 million compared to $4.7 million for the second quarter of 2023, primarily reflecting higher subscription revenue from new and existing commercial contracts.***

> Service revenue for the second quarter of 2024 decreased to $4.0 million compared to $4.1 million for the second quarter of 2023, primarily reflecting lower service revenue from commercial customers.

> Total revenue for the second quarter of 2024 increased to $10.4 million compared to $8.7 million for the second quarter of 2023.

20.    On August 13, 2024, the Company submitted its quarterly report for the period ended June 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The quarterly report stated that "ARR increased $7.3 million, or 44% from June 30, 20203 to June 30, 2024, ***primarily driven by the entry into new commercial subscription contracts and increased subscription fees on existing commercial contracts."*** The report also stated that subscription revenue was "offset" by the "delayed" but "anticipated renewal of a commercial contract." Specifically, the quarterly report stated, in relevant part:

*Subscription*

Subscription revenue consists primarily of revenue earned from subscription fees for access to our SaaS platform and products and, to a lesser extent, licensing fees for our software products. ***The majority of subscription contracts are recurring, paid in advance and recognized over the term of the subscription, which is typically one to three years.***

***The $0.4 million increase in subscription revenue for the three month period ended September 30, 2024, compared to the corresponding three month period ended September 30, 2023, primarily reflects higher subscription revenue from new and existing commercial contracts, partially offset by the delayed timing in the anticipated renewal of a commercial contract.***

The $4.0 million increase in subscription revenue for the nine month period ended September 30, 2024, compared to the corresponding nine month period ended September 30, 2023, primarily reflects higher subscription revenue from new and existing commercial contracts, partially offset by the delayed timing in the anticipated renewal of a commercial contract.

21.    On November 14, 2024, Digimarc issued a press release announcing its financial results for the quarter ended September 30, 2024. Specifically, the press release stated, in relevant part:

"Looking forward, Q3 was the most significant quarter I have witnessed since I joined the company," said Digimarc CEO Riley McCormack. "We made significant progress on things underway and opened new areas of opportunity we previously didn't believe addressable in the near term. Looking back, we acknowledge Q3 revenue doesn't reflect the reality just described. The gap between what lies ahead and what lies behind has never been this large and we look forward to providing additional information to bridge that gap as soon as reasonably possible."

**Third Quarter Financial Results**

***Annual recurring revenue as of September 30, 2024 decreased to $18.7 million compared to $19.6 million as of September 30, 2023. The $0.9 million decrease reflects a $5.8 million decrease due to the delayed timing in the anticipated renewal of a commercial contract, partially offset by new annual recurring revenue from entry into new commercial subscription contracts and increased subscription fees on existing commercial contracts.***

***Subscription revenue for the third quarter of 2024 increased to $5.3 million compared to $4.8 million for the third quarter of 2023, primarily reflecting higher subscription revenue from new and existing commercial contracts, partially offset by the delayed timing in the anticipated renewal of a commercial contract.***

Service revenue for the third quarter of 2024 remained flat, compared to the third quarter of 2023, primarily reflecting higher service revenue from HolyGrail recycling projects, partially offset by lower service revenue from the Central Banks.

Total revenue for the third quarter of 2024 increased to $9.4 million compared to $9.0 million for the third quarter of 2023.

22.    On November 14, 2024, the Company submitted its quarterly report for the period ended September 30, 2024 on a Form 10-Q filed with the SEC, affirming the previously reported financial results. The quarterly report stated, in relevant part: "ARR decreased $0.9 million, or 5% from September 30, 2023 to September 30, 2024, reflecting a $5.8 million decrease due to the delayed timing in the anticipated renewal of a commercial contract, partially offset by new annual recurring revenue from entry into new commercial subscription contracts and increased subscription fees on existing commercial contracts."

23.    The above statements identified in ¶¶ 17-22 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that a large commercial partner would not renew a large contract on the same terms; (2) that, as a result, Digimarc would renegotiate the large commercial contract; (3) that, as a result of the foregoing, the Company's subscription revenue and annual recurring revenue would be adversely affected; (4) that, as a result

of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

## Disclosures at the End of the Class Period

24.     On February 26, 2025, after the market closed, Digimarc released its fourth quarter and full year 2024 financial results, revealing the Company's quarterly subscription revenue decreased 10% to $5.0 million (compared to $5.6 million in the previous year) and annual recurring revenue had decreased to $20.0 million (compared to $22.23 million in the previous year). These declines "primarily reflect[ed] a $5.8 million decrease in ARR due to the expiration of a commercial contract in June 2024." Specifically, the press release stated, in relevant part:

> "Digital watermarks excel at the identification and authentication of physical goods and digital assets. Recent invention and market development have opened exciting near-term opportunities for us, concentrated around our authentication use cases. In response, we are prioritizing our authentication Go-To-Market efforts for the time being," said Riley McCormack, Digimarc CEO. "To ensure we fully capitalize on the opportunities immediately in front of us, we have reorganized the company to reflect this near-term focus. We expect these efforts will allow us to achieve positive non-GAAP net income no later than the Fourth Quarter of 2025 and set us up to deliver meaningfully positive free cash flow in Fiscal Year 2026 and beyond."

> Fourth Quarter 2024 Financial Results

> ***Annual recurring revenue (ARR1) as of December 31, 2024 decreased to $20.0 million compared to $22.3 million as of December 31, 2023. The $2.3 million decrease primarily reflects a $5.8 million decrease in ARR due to the expiration of a commercial contract in June 2024, partially offset by an increase in ARR from new and existing commercial contracts.***

> ***Subscription revenue for the fourth quarter of 2024 decreased to $5.0 million compared to $5.6 million for the fourth quarter of 2023, primarily reflecting the expiration of a commercial contract in June 2024, partially offset by higher subscription revenue from new and existing commercial contracts.***

> Service revenue for the fourth quarter of 2024 decreased to $3.6 million compared to $3.7 million for the fourth quarter of 2023, primarily reflecting $0.4 million of lower government service revenue, partially offset by $0.3 million of higher service revenue from HolyGrail 2.0 recycling projects.

Total revenue for the fourth quarter of 2024 decreased to $8.7 million compared to $9.3 million for the fourth quarter of 2023.

25.    On this news, Digimarc's stock price fell $11.65, or 43.1%, to close at $15.39 per share on February 27, 2025, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

26.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Digimarc securities between May 2, 2024 and February 26, 2025, inclusive , and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

27.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Digimarc's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Digimarc shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Digimarc or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Digimarc; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

31.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

32.     The market for Digimarc's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Digimarc's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Digimarc's securities relying upon the integrity of the market price of the Company's securities and market information relating to Digimarc, and have been damaged thereby.

33.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Digimarc's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Digimarc's business, operations, and prospects as alleged herein.

34.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Digimarc's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

35.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

36.     During the Class Period, Plaintiff and the Class purchased Digimarc's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information

alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

37.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Digimarc, their control over, and/or receipt and/or modification of Digimarc's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Digimarc, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

38.     The market for Digimarc's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Digimarc's securities traded at artificially inflated prices during the Class Period.  On January 6, 2025, the Company's share price closed at a Class Period high of $47.26 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Digimarc's securities and market information relating to Digimarc, and have been damaged thereby.

39.     During the Class Period, the artificial inflation of Digimarc's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the

damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Digimarc's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Digimarc and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

40. At all relevant times, the market for Digimarc's securities was an efficient market for the following reasons, among others:

(a) Digimarc shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b) As a regulated issuer, Digimarc filed periodic public reports with the SEC and/or the NASDAQ;

(c) Digimarc regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d) Digimarc was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

41.     As a result of the foregoing, the market for Digimarc's securities promptly digested current information regarding Digimarc from all publicly available sources and reflected such information in Digimarc's share price. Under these circumstances, all purchasers of Digimarc's securities during the Class Period suffered similar injury through their purchase of Digimarc's securities at artificially inflated prices and a presumption of reliance applies.

42.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.   Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

43.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Digimarc who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

44.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

45.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Digimarc's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

46.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Digimarc's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

47.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Digimarc's financial well-being and prospects, as specified herein.

48.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Digimarc's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Digimarc and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

49.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the

Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

50.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Digimarc's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

51.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Digimarc's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Digimarc's securities during the Class Period at artificially high prices and were damaged thereby.

52.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Digimarc was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Digimarc securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

53.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

54.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

55.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56.     Individual Defendants acted as controlling persons of Digimarc within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff

contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.    As set forth above, Digimarc and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)    Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.


Dated:   March 10, 2025

*/s/ Rebecca Dawson*

**GLANCY PRONGAY & MURRAY LLP**
Rebecca Dawson
230 Park Ave, Suite 358
New York, New York 10169
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
Email: RDawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
2121 Avenue of the Stars, Suite 800
Century City, CA 90067
Telephone: (310) 914-5007

*Counsel for Plaintiff Karen Mayer*

## SWORN CERTIFICATION OF PLAINTIFF

## DIGIMARC CORPORATION SECURITIES LITIGATION

I, Karen Mayer, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase the Digimarc Corporation securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Digimarc Corporation securities during the Class Period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class under this title during the last three years, except for the following:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

3/6/2025
_____
Date

_Karen Mayer_
_____
Karen Mayer

**Karen Mayer's Transactions in Digimarc Corporation (DMRC)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 9/26/2024 | Bought | 3 | $27.00 |
| 11/6/2024 | Bought | 2 | $33.10 |
| 12/16/2024 | Bought | 1 | $34.43 |
| 2/7/2025 | Bought | 2 | $35.00 |